IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ELLA ADAMS on behalf of A.A.,    )
                                 )
            Plaintiff,           )
                                 )
v.                               )    Case No. CIV-10-344-RAW
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Ella Adams ("Plaintiff"), on behalf of the minor child, A.A. ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability for persons under the age of 18 is defined by the Social Security Act as the "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to

cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. Social Security regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act. See, 20 C.F.R. § 416.924.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of

---

[1] At step one, a child will not be deemed disabled if he is working and such work constitutes substantial gainful activity. requires the claimant to establish that he is not engaged in substantial gainful activity. At step two, a child will not be found disabled if he does not suffer from a medically determinable impairment that is severe. At step three, a child's impairment must meet a listing and must meet the duration requirement of 12 months. 20 C.F.R. § 416.924(b), (c) and (d).

2

Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 17, 1989 and was 14 years old when he filed for disability benefits and 17 years old on the date the ALJ issued his decision. Claimant is alleged to have become disabled due to depression, a seizure disorder, and paranoid schizophrenia.

### Procedural History

On October 1, 2004, Claimant, through his representative, protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381 et seq.). Claimant's application for benefits was denied in its entirety initially and on reconsideration. The ALJ issued an unfavorable decision on March 19, 2007 but was reversed by the Appeals Council and the matter was remanded with instructions. On February 25, 2008, a hearing before ALJ Lantz McClain was held in Tulsa, Oklahoma. By decision dated July 25, 2008, the ALJ issued a

partially favorable decision, finding Claimant was not disabled before April 7, 2007. On July 20, 2010, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined that Claimant's condition did not meet a listing and he had not been under a disability before April 7, 2007.

### Review

Plaintiff asserts the ALJ committed error in: (1) failing to apply the correct legal standards in finding A.A.'s mental impairments did not meet a listed impairment prior to April 7, 2007; (2) finding A.A.'s mental impairments did not functionally equal a listed impairment prior to April 7, 2007; and (3) finding neither Plaintiff's nor Claimant's testimony to be credible.

### The Step Three Analysis

Claimant contends the ALJ failed to consider all of the medical evidence of mental disability in arriving at an onset date of April 7, 2007 - the date Claimant was hospitalized for active psychotic symptoms. (Tr. 23A). The medical record prior to this

date is relatively sparse. The record does indicate that Claimant was treated by Dr. Strode in July of 1998 for hearing voices and depression. (Tr. 199). His mother was reported as paranoid schizophrenic and his biological father was reported as multiple personality schizophrenic. (Tr. 198). From May of 1999 through July of 1999, Claimant underwent treatment at Blue Sky Mental Health Center for low self-esteem/peer relationships and displaying poor social skills, social withdrawal and no peer relationships. (Tr. 169-242). In June of 1999, Claimant was diagnosed with Major Depression, Recurrent without psychotic features. He was found to be socially withdrawn and had not developed age appropriate skills. He would walk off when he got mad and go to the store or bang his head on the wall several times. He had problems disregarding the rules. (Tr. 191). Claimant exhibited problems sleeping at night and he was irritable and displayed anger with highly inappropriate emotional responses. Claimant displayed poor judgment and was "preoccupied by unusual thoughts." He reported believed something bad was going to happen to him or his family. (Tr. 190).

On November 12, 2004, Claimant suffered a seizure. (Tr. 381). He was prescribed medication but it made him drowsy. (Tr. 375).

On May 23, 2005, Claimant underwent a mental status examination by Dr. Dennis A. Rawlings. Claimant presented to Dr. Rawlings with complaints of "hallucinations, learning problems,

5

sleep problems and seizure disorder." Dr. Rawlings states that the "voices" were first diagnosed and treated in 2000. (Tr. 258). He also notes Claimant took Risperdal for the "voices" but that the medication had been discontinued. (Tr. 259).

Claimant scored 30 out of 30 points on the Mini Mental Status Exam. He achieved a score of 102 on the WRAT-III Reading Section. His word recognition was at a high school level. His manner of relating was quiet, passive, and irritable. Id. He was cooperative, with slowed speech, thought processes were logical, relevant and coherent. His sleep was poor. His energy level was "hyper." Suicidal and homicidal ideations were denied. Hallucinations were reported in the past, characterized as "whispers." His insight into problems was poor. His Full Scale WISC-IV IQ was 80. Dr. Rawlings referred Claimant for outpatient evaluation of psychosis. (Tr. 260).

Dr. Rawlings diagnosed Claimant at Axis I: Rule Out Psychotic Disorder NOS, By History, Mathematics Disorder, Learning Disorder NOS, Visual Motor Dyslexia, Sleep Disorder Due to a General Medical Condition; Axis II: Diagnosis Deferred; Axis III: See physician's report; Axis IV: Problems with the Primary Support Group, Educational Problems; Axis V: GAF both current and past of 60. (Tr. 261).

On March 27, 2007, Claimant was admitted to Green Country

Behavioral Health Services stating he believed he has power to read minds, began running and could not stop, and that he feels ants running all over him. He was prescribed anti-psychotic medication and discharged. (Tr. 407).

On April 7, 2007, Claimant was hospitalized at the Oklahoma State University Medical Center for active psychotic symptoms including multiple delusional thoughts including grandiosity and religious delusions. He was diagnosed with schizophrenic disorder, paranoid type. (Tr. 411-12).

In his most recent decision, the ALJ found Claimant suffered from the severe impairments of major depression, seizure disorder, and paranoid schizophrenia. (Tr. 19). He determined that prior to April 7, 2007, Claimant did not have marked limitations caused by his impairments in the six designated domains of functioning - acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 20-23A). The ALJ concluded, however, that as of April 7, 2007 when Claimant was hospitalized for "active psychotic symptoms including multiple delusional thoughts," Claimant met a listing. (Tr. 23A). Therefore, this appeal only covers the period from filing for benefits of October 1, 2004 until April 7, 2007.

Soc. Sec. R. 83-20 provides, in pertinent part:

7

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e, be decided on medical grounds alone) before onset can be established.
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

The medical record indicates Claimant's schizophrenia did not suddenly manifest itself on April 7, 2007. As early as July of 1998, Claimant began hearing voices which is a symptom of paranoid schizophrenia. Schizophrenia, *Nat'l Institute of Mental Health, U.S. Dept. of Health and Human Servs.*, p. 2 (2009). Other records indicate Claimant was first treated with medication for hearing voices in 2000. Certainly, Claimant experienced full blown symptoms on March 27, 2007. Yet, the ALJ decided to designate the bright line date of Claimant's hospitalization as the onset date.

"In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning

8

impairment severity." Soc. Sec. R. 83-20. In determining the onset date of a disability, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." Potter v. Sec. of Health & Human Servs., 905 F.2d 1346,1348-49 (10th Cir. 1990). If the onset date of a disability must be inferred, the ALJ should consult a medical advisor. Soc. Sec. R. 83-20. The necessity to engage the services of a medical advisor, however, only arises if the medical evidence of onset is ambiguous. Blea v. Barnhart, 466 F.3d 903, 910 (10th Cir. 2006).

While it is often easier to determine the onset date to be the date of diagnosis, "only in the rarest of cases is a person's disabling condition diagnosed on the day it begins." McClellan v. Apfel, 2000 WL 433094, 9 (D. Kan.). This is particularly true of a mental impairment, which is often not diagnosed right away precisely because the impairment itself interferes with the claimant's awareness of the cause of her difficulties. Id. citing Morrison v. Bowen, 738 F.Supp. 1351 (D. Kan. 1987).

In this instance, the medical evidence creates an ambiguity in the potential onset date of disability. As a result, the ALJ shall re-evaluate the medical record and employ the services of a medical advisor to assist in arriving at the Claimant's onset date.

## Functional Equivalence for a Listing

Claimant also suggests the ALJ's analysis of the six domains for functional disability is lacking. The ALJ expends considerable space in regurgitating the required showing in each domain but provides little explanation for the ultimate conclusion on each. On remand, the ALJ shall cite to the medical record in reaching his conclusions as to each domain.

## Credibility Analysis

Claimant also challenges the adequacy of the ALJ's credibility evaluation. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5)

treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ was accepting of Claimant's credibility as of April 7, 2007 and after while rejecting the same in testimony relating to disability prior to that date.  (Tr. 24).  This sudden change in veracity is without explanation.  As such is the case, the ALJ has not tied his credibility findings to the evidentiary record as required by the prevailing case authority.  On remand, he shall re-evaluate the Claimant's credibility in light of the medical record.

## Conclusion

Based upon the foregoing, the undersigned Magistrate Judge finds the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge respectfully recommends the ruling of the Commissioner of Social Security Administration be **REVERSED** and the case **REMANDED** for further proceedings.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 12th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE